UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MELINDA LUCK,

                Plaintiff,

-against-

WESTCHESTER MEDICAL CENTER, MEGAN
WARD, CARMEL TOWN POLICE, JEFFREY J.
EAGAN, MICHAEL CAZARRI, JOHN DEARMAN,
                Defendants.

No. 17-cv-9110 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

    Plaintiff Melinda Luck brings this action against Defendant Westchester Medical Center ("WMC"), Megan Ward, Carmel Town Police, Jeffrey Eagan, Michael Cazarri, and John Dearman through her amended complaint filed on March 23, 2018. ("Amended Complaint," ECF No. 9.) Plaintiff asserts claims for violations of 42 U.S.C. § 1983 and New York Vehicle and Traffic Law § 1194(4). Presently before the Court is Defendants WMC's and Ward's motion to dismiss pursuant to Federal Rules of Civil Procedure Rules 12(b)(6). (ECF No. 35.) For the following reasons, Defendants' motion is GRANTED.

## BACKGROUND

The following facts[1] are derived from the Amended Complaint and the documents appended thereto and are assumed to be true for the purposes of this motion.

On May 15, 2015 at about 11:53 PM, Plaintiff left her apartment to go to a bar called the South Side. (Amended Compl. ¶ 1.) She arrived at the South Side at approximately 12:00 AM and began having a conversation with four individuals at the bar. (*Id.*) Plaintiff ordered a drink and, after about ten minutes, Plaintiff and the four individuals ordered a round of shots, one per person. (*Id.*) Plaintiff reported feeling woozy about ten minutes after drinking the shot. (*Id.*) In total, Plaintiff was at the South Side for about thirty minutes. (*Id.*) At or about 12:51 AM, Plaintiff, the driver, was in a serious car accident.[2] (*Id.* ¶ 2.) Two of the people she had been speaking with at the bar were passengers. (*Id.*) Plaintiff was partially ejected through the windshield where she was rendered unconscious. (*Id.* ¶ 3.) After law enforcement arrived, Plaintiff was airlifted to WMC, still unconscious, at approximately 1:30 AM. (*Id.*) She arrived at WMC at about 2:15 AM. (*Id.* ¶ 4.) Defendant Megan Ward, a registered nurse working at WMC, was assigned to be Plaintiff's primary nurse, and Plaintiff was under Defendant Ward's care until 3:25 AM when she was transferred to the intensive care unit. (*Id.*) At about 2:25 AM, ten minutes after her arrival at WMC, "it is alleged" that Defendant Ward drew a blood sample from Plaintiff at the direction of Defendant Police Officer Eagan. (*Id.* ¶ 5.) Plaintiff was eventually diagnosed with subdural brain hemorrhaging, a contusion of the middle lobe of her

---

[1] The Amended Complaint contains various other factual allegations largely focused on Plaintiff's efforts to obtain records after the initiation of her criminal case. Those facts are not summarized here as they did not involve Defendants Ward or WMC and are not relevant to their motion to dismiss.

[2] In her opposition, Plaintiff disputes that her Amended Complaint alleges that she was the driver of the vehicle in the accident. (Pl.'s Opp'n ¶ 10, ECF No. 28.) However, Plaintiff cites to and relies upon documents in her Amended Complaint which show that she was the driver. (Compl. ¶¶ 9 – 12, Ex. D, E, F & G.) At the motion to dismiss phase, courts may consider documents attached to a complaint. *Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013).

right lung, and lacerations to the left side of her left eye, her forehead, and her scalp. (*Id.* ¶ 6.) At least one of the other passengers also sustained serious injuries, including multiple facial fractures. (*Id.* ¶ 7.)

Plaintiff was discharged from WMC on or about May 20, 2015. (*Id.* ¶ 8.) On May 21, 2015, the blood draw "that was allegedly obtained" was submitted by Carmel Police to a crime laboratory for drug and blood alcohol content ("BAC") testing. This was "five days after the initial blood draw." (*Id.* ¶ 9.)

On October 6, 2015, Plaintiff was charged with driving while intoxicated and vehicular assault and arrested. (*Id.* ¶ 14.) Presumably in connection with her defense, Plaintiff submitted Freedom of Information Law ("FOIL") requests to WMC for (1) its policy and procedures ("WMC Policy") for obtaining BAC information for law enforcement and for (2) proof that a law enforcement officer was present when her blood was drawn and that the WMC Policy was followed. (*Id.* ¶¶ 24 – 25.) WMC provided its policy but responded to Plaintiff's second request by stating that the "requested information [is] not available in WMC records." (*Id.* ¶ 25, Ex. P.) On April 1, 2016, Defendant Ward testified before a grand jury that she drew blood from Plaintiff, who was unconscious and unresponsive at the time of the blood draw, at the request of law enforcement.[3] (*Id.* ¶ 45.)

Defendants move to dismiss Plaintiff's Amended Complaint due her failure to state a claim upon which relief can be granted.

---

[3] Plaintiff states that Defendant Ward "allegedly" testified, but Plaintiff attaches Defendant Ward's testimony to her Amended Complaint as Exhibit O.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. In considering a 12(b)(6) motion, a court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). A court also need not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.*

Further, a court is generally confined to the facts alleged in the complaint for the purposes of considering a motion to dismiss pursuant to 12(b)(6). *Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). A court may, however, consider documents attached to the complaint, statements or documents incorporated into the complaint by reference, matters of which judicial notice may be taken, public records, and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit. *See Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013).

Where a plaintiff proceeds *pro se*, the court must construe the complaint liberally and interpret it to "raise the strongest arguments that [it] suggest[s]." *Askew v. Lindsey*, No. 15-CV-7496(KMK), 2016 WL 4992641, at *2 (S.D.N.Y. Sept. 16, 2016) (quoting *Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013)). Yet, "the liberal treatment afforded to *pro se*

litigants does not exempt a *pro se* party from compliance with relevant rules of procedural and substantive law." *Id.* (quoting *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013)).

## DISCUSSION

### I. Claims Arising under § 1983

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983.

Although Section 1983 "is not itself a source of substantive rights, it is a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). To state a claim under § 1983, a plaintiff must allege "(1) the challenged conduct was attributable to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York*, No. 09-CV-5446(SHS), 2013 WL 1803896, at *2 (S.D.N.Y. Apr. 25, 2013); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010); *Quinn v. Nassau Cty. Police Dep't*, 53 F. Supp. 2d 347, 354 (E.D.N.Y. 1999) (Section 1983 "furnishes a cause of action for the violation of federal rights created by the Constitution.").

Here, Plaintiff alleges that Defendant Ward, an employee of Defendant WMC, violated her Fourteenth Amendment interests in life and property by drawing her blood while she was in critical condition and without any legal justification. Treating the *pro se* Amended Complaint liberally, the Court assumes that Plaintiff is also raising a Fourth Amendment claim. The Fourth Amendment protects the right of individuals to be secure in their persons and property against

5

unreasonable searches and seizures. U.S. Const. amend. IV. The Fourteenth Amendment requires that no "state . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Neither Amendment was violated here.

A.   **Fourth Amendment**

Although blood tests are "searches" under the Fourth Amendment, the Fourth Amendment only proscribes those searches that are unreasonable. *See Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 619 (1989); *Anthony v. City of New York*, 339 F.3d 129, 141 – 42 (2d Cir. 2003). A blood test at the direction of law enforcement with probable cause, exigent circumstances, and a reasonable examination procedure is not unreasonable. *Haynes v. Brat*, No. 06-CV-6188, 2007 WL 3047101, at *5 (W.D.N.Y. Oct. 18, 2007) (citing *Schmerber v. California*, 384 U.S. 757, 759 (1966); *People v. Kates*, 53 N.Y. 2d 591, 594 (1981)); *see Skinner*, 489 U.S. at 625 (holding that it was reasonable for the government to require employees involved in certain train accidents to submit to a breathalyzer test to test for the presence of alcohol); *Roe v. Marcotte*, 193 F.3d 72, 77 (2d Cir. 1999) ("Thus, we need only decide whether the statutorily required blood test at issue comports with the Fourth Amendment's mandate that a search be reasonable."); *Mac Ineirghe v. Bd. of Educ. of E. Islip Union Free Sch. Dist.*, 05-CV-4323(JFB)(AKT), 2007 WL 2445152, at *11 (E.D.N.Y. Aug. 22, 2007) ("Courts have upheld both urinalysis and blood tests as reasonable."); *Beharry v. M.T.A. N.Y. City Transit Auth.*, No. 96-CV-1203(FB), 1999 WL 151671, at *11 (E.D.N.Y. Mar. 17, 1999) (holding that a request for a blood and urine sample was reasonable and did not violate the Fourth Amendment because the plaintiff had failed to comply with the first request); *see also Sack v. Lowder,* Nos. 91-CV-7082, 91-CV-7111, 1992 WL 2884, at *4 – 5 (10th Cir. Jan. 6, 1992) (holding that a blood draw of the

driver in an accident resulting in a death, which was completed in compliance with a state statute was not a Fourth Amendment violation).

Based on the face of the Amended Complaint, the blood draw was reasonable. Plaintiff was in a serious motor vehicle accident driving at an unsafe speed and left of pavement markings, after leaving a bar, so serious that she was rendered unconscious and partially sent through a windshield and that at least one of her passengers also sustained serious injuries. Law enforcement arrived at the scene and had Plaintiff airlifted to WMC for medical treatment. Once she had arrived at WMC, Plaintiff remained unconscious when Defendant Ward, at the request of a law enforcement officer, drew her blood to determine her blood alcohol content level. These allegations indicate that law enforcement had probable cause[4] to believe that Plaintiff had been driving while intoxicated, and the dissipation of blood alcohol concentration was an exigent circumstance. *See, e.g., Schmerber v. California*, 384 U.S. 757, 769 (1966). Thus, Plaintiff fails to state a plausible claim for relief under the Fourth Amendment.

**B.     Fourteenth Amendment**

Plaintiff's Fourteenth Amendment substantive due process arguments, that the decision to draw her blood while she was unconscious deprived her of her property and endangered her life without due process are also unavailing based on a failure to state a facially plausible claim.

"The Supreme Court has held that the taking of a blood sample while a person is unconscious by a qualified technician and in a controlled setting does not offend due process

---

[4] In a similar case, the Second Circuit determined that law enforcement had probable cause to arrest a person for driving while intoxicated because he knew that the person had driven his pickup truck into a telephone pole in the early hours of the morning. *Coons v. Casabella*, 284 F.3d 437, 441 (2d Cir. 2002); *see also People v. Bohacek*, 945 N.Y.S.2d 460, 461 (N.Y. App. Div. 3d Dep't 2012) (holding that there was probable cause to perform a blood test on the defendant who was in an accident due to, together with the discovery of pills in her car, her failure to keep right in clear weather conditions); *People v. Steel*, 265 A.D.2d 586, 586 (N.Y. App. Div. 2d Dep't 1999) (holding that there was probable cause to arrest the defendant for driving while intoxicated when he was found unconscious in his automobile after an accident).

7

because 'there is nothing brutal or offensive in the taking of a sample of blood when done . . . under the protective eye of a physician.' " *Belgarde v. Montana*, 123 F.3d 1210, 1214 (9th Cir. 1997) (internal quotation marks omitted) (quoting *Breithaupt v. Abram,* 352 U.S. 432, 435 (1957)); *see Schmerber v. California*, 384 U.S. 757, 759 – 60 (1966) (holding that an involuntary extraction of the plaintiff's blood at the direction of law enforcement for the purposes of testing for alcohol content did not violate the Due Process Clause of the Fourteenth Amendment and upholding *Breithaupt*); *Robinson v. N.Y. State Div. of Parole*, No. 11-CV-4454(PKC), 2018 WL 4762250, at *6 (E.D.N.Y. Oct. 2, 2018) ("*Schmerber* 'also rejected arguments that the coerced blood test violated the right to due process.' " (quoting *South Dakota v. Neville*, 459 U.S. 553, 559 (1983)); *see also Makas v. Miraglia*, 300 F. App'x 9, 11 (2d Cir. 2008) (vacating the district court's dismissal of the plaintiff's claim that he was subjected to excessive blood tests in violation of substantive due process and directing the lower court to analyze the claim under the Fourth Amendment).

Nothing in Plaintiff's Amended Complaint suggests that the circumstances of her blood draw violated the Fourteenth Amendment. While Plaintiff was unconscious, Defendant Ward, a registered nurse, took a sample of her blood at WMC. (Compl. ¶¶ 3, 5 & 42.) Based on the face of the Amended Complaint, there was nothing "brutal or offensive" in the taking of her blood sample; she was afforded appropriate process consistent with the Due Process Clause and New York Vehicle and Traffic Law. Accordingly, Plaintiff fails to state a plausible claim for relief under the Fourteenth Amendment.

## II. New York Vehicle and Traffic Law Claims

Under New York law, a registered professional nurse is authorized to withdraw blood for the purposes of determining the alcoholic or drug content at the request of a police officer.[5] N.Y. Veh. & Traf. Law § 1194. "No person entitled to withdraw blood . . . or hospital employing such person . . . shall be sued or held liable for any act done or omitted in the course of withdrawing blood at the request of a police officer pursuant to this section." § 1194(4)(2). Plaintiff alleges that Defendant Ward, a registered nurse, drew her blood for the purposes of determining her blood alcohol content but that she did not have the authorization of a police officer.

At the motion to dismiss stage, courts generally must accept as true all factual allegations in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). However, in her Amended Complaint, Plaintiff cites to grand jury testimony from Defendant Ward which directly contradicts her allegation that Defendant Eagan was not present and did not request the blood draw. (Compl. ¶¶ 5 & 45.) She also attaches this testimony to the Complaint. (*Id.* Ex. O.) Defendant Ward testified before a Grand Jury that Defendant Egan asked her to draw Plaintiff's blood and was in the room with her at the time the blood was drawn.[6] (*Id.*) In addition to factual allegations, courts may also consider documents attached to a complaint in deciding a motion to dismiss. *Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013). If the allegations in the complaint are contradicted by

---

[5] Plaintiff makes much out of Defendant Ward's alleged violation of WMC Policy. Under that policy, a valid order from a physician is needed for a blood draw, and according to Plaintiff Defendant Ward did not obtain a valid physician's order before drawing Plaintiff's blood. (Compl. ¶ 42, Ex. & P.) While this may be a policy at WMC, it is not a requirement under the law which only requires that an individual drawing blood at the request of law enforcement for a drug or alcohol content test be a registered nurse or other specified medical professional. N.Y. Veh. & Traf. Law § 1194(4). Failure to follow institutional or company procedures alone, without proof of a violation of the law, is not a failure to follow the law; the law controls over the policy. *See Stagliano v. Herkimer Cent. Sch. Dist.*, 151 F. Supp. 3d 264, 275 (N.D.N.Y. 2015); *Harris v. Armstrong*, No. 02-CV-665(DFM), 2006 WL 861023, at *11 (D. Conn. Mar. 31, 2006).

[6] Defendant Eagan's grand jury testimony, which Plaintiff attaches to her opposition, is consistent with that of Defendant Ward. (Pl.'s Opp'n, Ex. B.)

9

attached documents, the court need not accept the truth of the allegations. *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011); *Heath v. Banks*, No. 15-CV-4228(CBA)(MDG), 2016 WL 5716817, at *4 (E.D.N.Y. Sept. 30, 2016); *see Halebian v. Berv*, 644 F.3d 122, 131 n.7 (2d Cir. 2011) ("[I]t is well established that on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court may also rely upon documents attached to the complaint as exhibits[ ] and documents incorporated by reference in the complaint." (internal quotation marks omitted)).

When confronted with sworn testimony that contradicts allegations in a complaint, courts should accept sworn testimony. *Thomas v. Westchester Cty. Health Care Corp.*, 232 F. Supp. 2d 273, 279 (S.D.N.Y. 2002) ("Faced with [a] confounding contradiction [between plaintiff's allegations in her complaint and her sworn testimony], the Court has no basis for accepting as true the vague statements in [the] [c]omplaint as opposed to [plaintiff's] sworn testimony . . . ."). Defendant Ward's sworn testimony contradicts Plaintiff's allegation that Defendant Eagan was not present when her blood was drawn.[7] Therefore, there is no violation of Vehicle and Traffic Law § 1194 alleged in Plaintiff's Complaint. Based on the face of the Complaint, a registered nurse drew blood from Plaintiff at the request of a law enforcement officer for the purposes of a drug and alcohol test which satisfies the requirements of § 1194.[8] (Compl. ¶¶ 5, 42, & 45.)

---

[7] Plaintiff claims that the records she submitted with her Amended Complaint show that Defendant Eagan was not present at WMC to request that Defendant Ward draw Plaintiff's blood and implies that Defendant Ward lied in her grand jury testimony. (Compl. ¶ 53.) Contrary to Plaintiff's assertion, it is unclear to what the timestamps in documentation about law enforcement and medical response to the accident refer, and there is certainly no clear showing that it was "impossible" for Defendant Eagan to be present when Plaintiff's blood was drawn. Defendant Ward's testimony, however, is clear and shows that Defendant Eagan was present and requested the blood draw. With nothing to indicate that Defendant Ward lied in her grand jury testimony, the Court finds that testimony to be credible. *See Scruggs v. Amalgamated Transit Union Local*, No. 12-CV-1442(ERW), 2013 WL 4436266, at *6 – 7 (E.D. Mo. Aug. 16, 2013) (granting the defendants' motion to dismiss because the plaintiff failed to show how the defendants conspired to lie and pursue an unfair investigation against her).

[8] The Court will not address Defendant WMC's liability as Defendant Ward's employer because each of Plaintiff's claims against Defendant Ward are dismissed. For an employer to be liable for the actions of its employee, the employee must have violated a law within the scope of his employment. *See Casaccia v. City of*

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED with leave to replead consistent with this Opinion at a later date to be determined by the Court.[9] The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 35, mail a copy of this Opinion to Plaintiff at her address as listed on ECF, and show proof of service on the docket.

Dated: February 1, 2019
       White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge

---

*Rochester*, No. 17-CV-6323(MAT), 2018 WL 324420, at *5 (W.D.N.Y. Jan. 8, 2018). Because Plaintiff did not plausibly allege that Defendant Ward violated a law, there is no liability to attribute to Defendant WMC.
  [9] Remaining Defendants are expected to file an additional motion to dismiss the Amended Complaint on April 12, 2019. The Court will set a schedule to allow Plaintiff to replead, as appropriate, at that time.