UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MELINDA LUCK,

Plaintiff,

-against-

WESTCHESTER MEDICAL CENTER, MEGAN
WARD, RN OF WMC, CARMEL TOWN POLICE,
JEFFREY J. EAGAN, INVESTIGATIVE OFFICER
OF POLICE, MICHAEL CAZZARI, CHIEF OF
POLICE, and LT. JOHN DEARMAN,
Defendants.

No. 17-cv-9110 (NSR)
OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge

Plaintiff Melinda Luck, proceeding *pro se*, commenced this action against Defendants

Westchester Medical Center ("WMC"), Megan Ward,[1] the Carmel Town Police ("Carmel Police

Department"), Jeffrey Eagan, Michael Cazzari, and John Dearman through a Complaint filed on

November 21, 2017. (ECF No. 2.) Plaintiff filed an amended complaint ("Amended

Complaint"), which is the operative complaint in this action, on March 23, 2018. (ECF No. 9.)

Plaintiff asserts claims for violations of 42 U.S.C. § 1983 ("Section 1983" or "§ 1983") and New

York Vehicle and Traffic Law § 1194(4). Presently before the Court is the Town of Carmel,[2]

Jeffrey Eagan, Michael Cazzari, and John Dearman's (collectively, "Police Defendants") motion

to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 72.) For the

following reasons, Police Defendants' motion is GRANTED.

---

[1] By Opinion and Order dated February 1, 2019, the Court granted WMC and Ward's motion to dismiss,
with leave to replead. (ECF No. 63.) The Court noted that a schedule allowing Plaintiff to replead would be set, as
appropriate, after the remaining Defendants filed their motion to dismiss on April 12, 2019. (*Id.*)

[2] Movants construe Plaintiff's claims against the Town of Carmel Police Department as claims against the
Town of Carmel, since the Police Department, a municipal subdivision, is not an entity that may be sued. (Defs.'
Mem. in Support of Mot. to Dismiss (ECF No. 75) at 10 n.3.)

## BACKGROUND

The following facts are derived from the Amended Complaint and the documents

appended thereto and are assumed to be true for the purposes of this motion.

On May 15, 2015, at about 11:53 PM, Plaintiff left her apartment to go to a bar called the

South Side.  (Amended Compl. ¶ 1.)  She arrived at the South Side at approximately 12:00 AM

and began having a conversation with four individuals at the bar.  (*Id.*)  Plaintiff ordered a drink

and, after about ten minutes, Plaintiff and the four individuals ordered a round of shots, one per

person.  (*Id.*)  Plaintiff reported feeling woozy about ten minutes after drinking the shot.  (*Id.*)  In

total, Plaintiff was at the South Side for about thirty minutes. (*Id.*)  At or about 12:51 AM,

Plaintiff, the driver, was in a serious car accident.[3]  (*Id.* ¶ 2.)  Two of the people she had been

speaking with at the bar were passengers.  (*Id.*)   Plaintiff was partially ejected through the

windshield where she was rendered unconscious.  (*Id.* ¶ 3.)  After law enforcement arrived,

Plaintiff was airlifted to WMC, still unconscious, at approximately 1:30 AM.  (*Id.*)  She arrived

at WMC at about 2:15 AM.  (*Id.* ¶ 4.)

Defendant Megan Ward, a registered nurse working at WMC, was assigned to be

Plaintiff's primary nurse, and Plaintiff was under Defendant Ward's care until 3:25 AM when

she was transferred to the intensive care unit. (*Id.*)  At about 2:25 AM, ten minutes after her

arrival at WMC, Defendant Ward drew a blood sample from Plaintiff at the direction of

Defendant Police Officer Eagan.  (*Id.* ¶ 5.)

Plaintiff was discharged from WMC on or about May 20, 2015.  (*Id.* ¶ 8.)  On May 21,

---

[3] In her opposition, Plaintiff disputes that her Amended Complaint alleges she was the driver of the vehicle involved in the accident. (Pl.'s Opp. to Defs.' Mot. to Dismiss ("Pl.'s Opp.") (ECF No. 76) ¶ 3.)  However, Plaintiff cites to and relies upon documents in her Amended Complaint which show that she was the driver. (Am. Compl. ¶¶ 9 – 12, Exs. D, E, F & G.)  At the motion to dismiss phase, courts may consider documents attached to a complaint. *Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013).

2015, the blood draw "that was allegedly obtained" was submitted by the Carmel Police Department to a crime laboratory for drug and blood alcohol content ("BAC") testing. This was "five days after the initial blood draw." (*Id.* ¶ 9.)

Following Plaintiff's car accident, Defendant Carmel Police Officer Eagan completed a Police Accident Report (the "accident report"). (*Id.* Ex. F.) The accident report indicates that Plaintiff was the driver of the only vehicle involved in the collision, which took place at 12:57 AM on May 16, 2015. (*Id.*) Plaintiff states that the time in the report is inaccurate because the accident actually took place between 12:45 AM and 12:51 AM. (*Id.* ¶ 63.) The report states that at the time of the collision, the vehicle was traveling at a high rate of speed, failed to keep right, crossed into the oncoming lane of traffic, and ran off the roadway before striking a tree in the woods approximately sixty feet from the roadway. (*Id.* Ex. F.) A box on the report was checked off to indicate "Accident Reconstructed." (*Id.*) Plaintiff's vehicle was towed and held by a company named "Bryson's Towing." (*Id.*; *see id.* Ex. J.) Police photos of the scene were taken. (*Id.* Ex. F.) Defendant Police Officer John Dearman reviewed and signed Officer Eagan's accident report. (*Id.*) Plaintiff received a copy of the accident report on May 24, 2015. (*Id.* ¶ 11.)

On September 1, 2015, Jessica Lugo, one of the passengers at the time of the accident, provided a voluntary statement, under penalty of perjury, to the Carmel Police Department. (*Id.* Ex. G.) Lugo states that on the night of the accident, she was in the front passenger seat of Plaintiff's car. (*Id.*) She states that Plaintiff began driving in the opposite direction of their intended destination. (*Id.*) When Lugo and a second passenger asked where they were going, Plaintiff became angry and her affect became blank. (*Id.*) Plaintiff then began driving at a high rate of speed, which felt to Lugo to be 60 to 65 miles per hour, straight into the woods on the

side of the road.  (*Id.*)  The car hit two trees before settling in a stream.  (*Id.*)

On October 6, 2015, Plaintiff was charged with driving while intoxicated ("DWI") and vehicular assault and arrested.  (*Id.* ¶ 14.)  Presumably in connection with her defense, Plaintiff submitted Freedom of Information Law ("FOIL") requests to WMC for (1) its policy and procedures ("WMC Policy") for obtaining BAC information for law enforcement and for (2) proof that a law enforcement officer was present when her blood was drawn and that the WMC Policy was followed.  (*Id.* ¶¶ 24–25.)  WMC provided its policy but responded to Plaintiff's second request by stating that the "requested information [is] not available in WMC records." (*Id.* ¶ 25, Ex. P.)  On April 1, 2016, Defendant Ward testified before a grand jury that she drew blood from Plaintiff, who was unconscious and unresponsive at the time of the blood draw, at the request of law enforcement.[4]  (*Id.* ¶ 45.)

Plaintiff also submitted FOIL requests to the New York State Police ("NYS Police") and the Carmel Police Department.  In her request to the NYS Police, she asked whether the NYS Police Accident Reconstruction Unit handled the Carmel Police Department case arising out of her accident.  (*Id.* ¶ 17.)  On June 7, 2016, Plaintiff received a response stating, "There is no record of the NYS Police Collision Reconstruction Unit responding to or adopting a case for the Carmel [Police Department] on that date for that accident."  (*Id.*)

In her request to the Carmel Police Department, Plaintiff sought the Department's policies and procedures in reference to motor vehicle accidents.  (*Id.* ¶ 26.)  The Carmel Police Department responded by sending its General Order O-08, entitled "Motor Vehicle Accidents/ Towing."  (*Id.* Ex. Q.)  In relevant part, General Order O-08 provides that in the event of a motor vehicle accident resulting in serious personal injury or fatality, an accident investigation report

---

[4] Plaintiff states that Defendant Ward "allegedly" testified, but Plaintiff attaches Defendant Ward's testimony to her Amended Complaint as Exhibit O.

must be filed.  Further, the responding officer "will notify the Shift Supervisor, the On-Call Detective, an Accident Reconstructionist and the Patrol Division Commander immediately," and should take all appropriate steps to preserve evidence, including by interviewing drivers and witnesses as soon as possible.  (*Id.* at 131–32.)

Presumably in connection with her defense, Plaintiff also received, *inter alia*, partial 911 minutes and photos from the Carmel Police Department pertaining to the accident.  (*Id.* ¶¶ 16, 21.)  Plaintiff attaches the partial "911 minutes," which actually appear to be police dispatch records from the date of the accident with "911 minutes" handwritten at the top of the first page. (*Id.* Ex. L.)  Based on these records, officers from the Carmel Police Department responded to a call reporting hearing a loud bang at the scene of the accident.  (*Id.*)  Upon arrival, the officers observed that a car had driven into the woods and landed in a stream.  (*Id.*)  Calls were made for a detective and accident reconstructionist.  (*Id.*)  The records indicate that Plaintiff was the "operator/driver" of the vehicle.  (*Id.*)  While Plaintiff contends that the records show Defendant Eagan was at the scene until 3:30 AM, they only state that Defendant Eagan's "Comp Time" was "3:30."  (*Id.*)  They do not describe Defendant Eagan's physical location.

In January 2017, Plaintiff mailed complaints accompanied by exhibits to Defendant Police Chief Cazzari, Geico Insurance Company, Department of Motor Vehicles Commissioner Theresa L. Egan, and Attorney General Eric Schneiderman.  (*Id.* ¶¶ 27–34.)  The complaints allege, *inter alia*, that Police Defendants engaged in misconduct insofar as they failed to adequately investigate and accurately report on Plaintiff's accident because no accident reconstruction was performed, Plaintiff's car was towed rather than being kept on premises in the control of the police, Plaintiff was not interviewed about the accident, the accident report contained misinformation, and the results of the blood draw were falsified.  (*Id.* Exs. R, S, T &

U.)

On October 30, 2017, Plaintiff filed a petition under article 78 of the New York Civil

Procedure Law and Rules ("CPLR") in New York State Supreme Court, challenging the results

of her accident investigation. Approximately one month later, she filed this action in federal

court. Plaintiff alleges violations of her Fourteenth Amendment due process rights. Police

Defendants now move to dismiss Plaintiff's Amended Complaint due to her failure to state a

claim upon which relief can be granted.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a complaint must plead "enough facts to state a claim

to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A

claim is facially plausible when the factual content pleaded allows a court "to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint,

they must be supported by factual allegations." *Id.* at 679. In considering a 12(b)(6) motion, a

court must take all material factual allegations as true and draw reasonable inferences in the non-

moving party's favor, but a court is "not bound to accept as true a legal conclusion couched as a

factual allegation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks

omitted). A court also need not credit "mere conclusory statements" or "[t]hreadbare recitals of

the elements of a cause of action." *Id.*

Further, a court is generally confined to the facts alleged in the complaint for the

purposes of considering a motion to dismiss pursuant to 12(b)(6). *Cortec Indus. v. Sum Holding

L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). A court may, however, consider documents attached to the

complaint, statements or documents incorporated into the complaint by reference, matters of

which judicial notice may be taken, public records, and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit. *See Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013).

Where a plaintiff proceeds *pro se*, the court must construe the complaint liberally and interpret it to "raise the strongest arguments that [it] suggest[s]." *Askew v. Lindsey*, No. 15-CV-7496(KMK), 2016 WL 4992641, at *2 (S.D.N.Y. Sept. 16, 2016) (quoting *Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013)). Yet, "the liberal treatment afforded to *pro se* litigants does not exempt a *pro se* party from compliance with relevant rules of procedural and substantive law." *Id.* (quoting *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013)).

## DISCUSSION

### I. Judicial Notice

At the outset, the Court must determine whether it may properly consider additional information provided in exhibits to Police Defendants' moving papers. The exhibits consist of a certified transcript from the criminal matter in which Plaintiff was charged with, *inter alia*, driving while intoxicated, and a copy of Plaintiff's Certificate of Disposition in that matter. (Decl. of Michael A. Czolacz ("Czolacz Decl.") (ECF No. 74.) Exs. 1 & 2.) The exhibits illustrate that Plaintiff pleaded guilty to the offense of driving while intoxicated, in violation of New York Vehicle and Traffic Law § 1192.3, a class E felony since it was her second offense. (*Id.* Ex. A.) She was sentenced to one-and-one-half to three-years' incarceration. (*Id.* Ex. B.)

In deciding a Rule 12(b)(6) motion, the Court may consider facts alleged in the complaint or incorporated in it by reference. *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000). It can also consider documents that are integral to the complaint and relied upon therein, even if not attached or incorporated by reference. *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d

Cir. 2005).  "Plaintiffs' failure to include matters of which as pleaders they had notice and which were integral to their claim—and that they apparently most wanted to avoid—may not serve as a means of forestalling the district court's decision on the motion." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 44 (2d Cir. 1991).

For a document to be considered integral to the complaint, the plaintiff must (1) have "notice of all the information in the movant's papers" and (2) rely "on the terms and effect of the document in drafting the complaint ... mere notice or possession is not enough." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002).  Moreover, even if a document is "integral" to the complaint, "it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document" and that there is no material issue of fact regarding the document's relevance.  *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).

Plaintiff's guilty plea and the Certificate of Disposition in the criminal matter that forms the basis of this lawsuit are clearly integral to the Amended Complaint.  The Amended Complaint explicitly mentions the fact that "Plaintiff accepted a plea rendering a conviction and sentence."  (Am. Compl. ¶ 95.)  Indeed, most of the damages Plaintiff seeks necessarily flow from her conviction and imprisonment.

Moreover, Plaintiff does not object to the Court's consideration of Police Defendants' submissions.  To be sure, Plaintiff explains in her opposition to Police Defendants' motion that she pleaded guilty to a DWI charge, and states that her "conviction is currently under appeal with the Appellate Division[,] Second Department, App. Docket No. 2017-02401."  (Pl.'s Opp. ¶¶ 4–5.)  Accordingly, the Court takes judicial notice of the exhibits submitted by Police Defendants, as described above, for the limited purpose of establishing their existence and legal effect.  *See Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court

may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998)) (quotation marks omitted)).

## II.     Claims Arising under § 1983

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."  42 U.S.C. § 1983.

Although Section 1983 "is not itself a source of substantive rights, it is a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes."  *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004).  To state a claim under § 1983, a plaintiff must allege "(1) the challenged conduct was attributable to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York*, No. 09-CV-5446(SHS), 2013 WL 1803896, at *2 (S.D.N.Y. Apr. 25, 2013); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010); *Quinn v. Nassau Cty. Police Dep't*, 53 F. Supp. 2d 347, 354 (E.D.N.Y. 1999) (Section 1983 "furnishes a cause of action for the violation of federal rights created by the Constitution.").

The Fourteenth Amendment requires that no "state … deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.  Here, Plaintiff alleges that Police Defendants violated her Fourteenth Amendment due process rights by directing her blood to be

drawn while she was in critical condition and without any legal justification, by failing to properly investigate the accident, and by including false information in her accident report. Plaintiff further alleges that Police Defendants violated her equal protection rights by failing to complete an accident reconstruction in the course of their investigation.

Treating the *pro se* Amended Complaint liberally, the Court assumes that Plaintiff is also raising a Fourth Amendment claim based on the blood draw. The Fourth Amendment protects the right of individuals to be secure in their persons and property against unreasonable searches and seizures. U.S. Const. amend. IV.

Finally, the Court construes Plaintiff's complaint that Police Defendants delayed the initiation of a criminal prosecution against her for approximately five months following the accident as raising a Sixth Amendment claim that she was deprived of the right to a speedy trial. *See* U.S. Const. amend. VI (providing that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury …").

Police Defendants argue that all of Plaintiff's claims should be dismissed as against them pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons discussed below, the Court agrees with Police Defendants.

### A. *Claims Barred by* **Heck**

Police Defendants first argue that all of Plaintiff's claims are barred by the Supreme Court's holding in *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court considered whether a state prisoner,[5] seeking monetary damages and not early release from his

---

[5] When she commenced this action, Plaintiff was in state custody. It appears, based on correspondence from Plaintiff, that she has since been released. (ECF No. 61.) In this Circuit, *Heck* does not bar Section 1983 suits "where an action under § 1983 was a diligent plaintiff's only opportunity to challenge his conviction in a federal forum." *Teichmann v. New York*, 769 F.3d 821, 828 (2d Cir. 2014). Such circumstances exist only "when habeas was *never* reasonably available to the plaintiff through no lack of diligence on his part," such as when the plaintiff is not and never has been in state custody. *Id.* (citing *Leather v. Ten Eyck*, 180 F.3d 420, 424 (2d Cir. 1999)). Even

incarceration arising from an alleged unconstitutional conviction, could pursue a claim under Section 1983. The Supreme Court determined that "in order to recover damages for an alleged unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence was reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a court's issuance of a writ of habeas corpus,[6] 28 U.S.C. § 2254." *Heck*, 512 U.S. at 486–87. Thus, *Heck* precludes the use of Section 1983 for legal suits seeking damages that "necessarily imply the invalidity" of a prior state or federal criminal conviction or duration of incarceration. *Id.* at 487.

The *Heck* Court specifically noted that "if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed." *Id.* at 487. "For example," the Court continued in a footnote, "a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction," because "such a § 1983 action, even if successful, would not necessarily imply that the plaintiff's conviction was unlawful." *Id.* at 487 n.7; *see McKithen v. Brown*, 481 F.3d 89, 102 (2d Cir. 2007) (observing that *Heck*'s footnote 7 underscored that its rule "does not bar a § 1983 action that, at most, increases the *likelihood* that a plaintiff will eventually be able to overturn a still-

though Plaintiff is no longer in state custody, in cannot be said that habeas was *never* reasonably available to her. Accordingly, *Heck* is applicable to her Section 1983 claims.

[6] Contrary to Plaintiff's argument in her opposition papers, the fact that a conviction is under appeal does not authorize an action for damages arising from an allegedly unlawful conviction and imprisonment.

outstanding conviction, but which does not go so far as to *necessarily* demonstrate the conviction's invalidity" (emphasis in original)).  To recover compensatory damages based on such a claim, however, the Section 1983 plaintiff must prove that the alleged constitutional violation caused him or her actual, compensable injury, which "does *not* encompass the 'injury' of being convicted and imprisoned."  *Heck*, 512 U.S. at 487 n.7 (emphasis in original).

Police Defendants are correct in noting that the Amended Complaint contains some allegations, including challenges to the validity of Plaintiff's blood test results and the accuracy of Police Defendants' conclusions that Plaintiff was the driver of the vehicle, which would necessarily demonstrate the invalidity of her DWI conviction.  (*See* Czolacz Decl. Ex. A.) Similarly, a determination that Plaintiff's Sixth Amendment right to a speedy trial was violated by her delayed arrest would necessarily implicate the invalidity of her conviction.[7]  Finally, the Amended Complaint suggests that Plaintiff's wrongful conviction and incarceration gave rise to her primary injuries.  A finding that Plaintiff was unconstitutionally deprived of her liberty upon conviction would imply that her conviction and imprisonment were unlawful.  *See Hayes v. Perotta*, 751 F. Supp. 2d 597, 605 (S.D.N.Y. 2010) (finding Plaintiff's claims were barred to the extent they arose solely from "'the "injury" of being convicted and imprisoned'" (quoting *Heck*, 512 U.S. at 487 n.7)).

However, *Heck* does not bar Plaintiff's claims to the extent that they give rise to damages for harms other than her conviction and imprisonment.  The Amended Complaint, liberally construed, seeks damages for the harms inflicted by the allegedly unlawful blood draw itself. The invalidity of the procedures by which Plaintiff's blood was obtained will not demonstrate the invalidity of her conviction, particularly because her conviction was based upon her guilty plea.

---

[7] In any event, Plaintiff's speedy trial claim fails because the right to a speedy trial does not arise at the pre-arrest phase.  *See United States v. Marion*, 404 U.S. 307, 321–22 (1971).

*See Ove v. Gwinn*, 264 F.3d 817, 823 (9th Cir. 2001) (the validity of plaintiff's DWI conviction

obtained through his guilty plea "does not in any way depend upon the legality of the blood

draws").  Thus, Plaintiff may attempt to recover damages from the loss of privacy and/or

property she suffered as a result of the blood draw.  *See Heck*, 512 U.S. at 487 n.7; *Townes v.

City of New York*, 176 F.3d 138, 148 (2d Cir. 1999) ("Victims of unreasonable searches or

seizures may recover damages directly related to the invasion of their privacy—including (where

appropriate) damages for physical injury, property damage, [and] injury to reputation....");

*Hayes*, 751 F. Supp. 2d at 605 (injuries caused by illegal search itself, separate from the injuries

of being convicted and imprisoned, were not barred by *Heck*).  Likewise, Plaintiff's claim that

the decision to draw her blood while she was unconscious deprived her of her property and

endangered her life in violation of her substantive due process rights under the Fourteenth

Amendment does not conflict with *Heck* and is not subject to its bar.

Similarly, Police Defendants' alleged failure to adequately investigate the accident,

which the Court construes as a substantive due process claim under the Fourteenth Amendment,

does not necessarily imply the invalidity of Plaintiff's conviction.  Plaintiff does not specifically

plead that she suffered harm flowing directly from this constitutional violation, separate from her

ultimate conviction and imprisonment.  However, the Court infers based on Plaintiff's assertions

that she was arrested following the investigation, (Am. Compl. ¶ 14), that her claim is partially

based on that initial deprivation of liberty.

The Court notes that insofar as Plaintiff's claim is based on the fact of her arrest, it falls

within the scope of a false arrest claim under the Fourth Amendment, rather than the Fourteenth

Amendment.[8]  *See Ying Li v. City of New York*, 246 F. Supp. 3d 578, 632–33 (E.D.N.Y. 2017)

---

[8] Although Plaintiff claims that Police Defendants' failure to investigate the accident violated specific
procedural rights she was entitled to, the internal procedural guidelines of the Carmel Police Department do not

(plaintiff's failure to investigate claim was based on her substantive due process right to be free from prosecution and arrest without probable cause, and thus was properly pleaded as a Fourth Amendment false arrest claim); *McCaffrey v. City of New York*, No. 11-CV-1636(RJS), 2013 WL 494025, at *5 (S.D.N.Y. Feb. 7, 2013) ("[W]hile a "failure to investigate" is not independently cognizable as a stand-alone claim, the Court will address the allegation to the extent that it is relevant to Plaintiff's malicious prosecution and fair trial claims."); *Blake v. Race*, 487 F. Supp. 2d 187, 212 n.18 (E.D.N.Y. 2007) (rejecting independent "failure to investigate" claim while recognizing that allegations connected with such a claim are "properly regarded as part of plaintiff's false arrest and malicious prosecution claims"); *Campbell v. Giuliani*, No. 99-CV-2603, 2000 WL 194815, at *3 n.6 (E.D.N.Y. Feb. 16, 2000) (noting that no independent claim for "failure to investigate" exists, and that a plaintiff making allegations under Section 1983 for failure to investigate must proceed under the rubric of false arrest, false imprisonment, or malicious prosecution).

A Section 1983 claim grounded in false arrest is not inevitably barred by *Heck*. "[A] finding that an arrest was made without probable cause, or that a warrantless entry into the home was made to effect an arrest, would not necessarily call into question the validity of a plaintiff's eventual conviction unless the evidence underlying the conviction was the fruit of such unlawful actions." *Fifield v. Barrancotta*, 353 Fed. App'x 479, 480–81 (2d Cir. 2009); *see Covington v. City of New York*, 171 F.3d 117, 123 (2d Cir. 1999) (distinguishing false arrest claims where the *only* evidence for conviction was obtained pursuant to the challenged arrest from claims in which there exists independent evidence upon which a conviction could be obtained that is in no way

---

create a constitutionally protected right to an investigation that includes accident reconstruction, the continued police custody of a vehicle, or a pre-arrest interview of the accused. At most, the internal guidelines may be relevant to the determination of whether Police Defendants committed a substantive due process violation. However, a failure to investigate claim is not cognizable in this instance as a substantive due process claim.

tainted by the unlawful arrest). As there is no indication in the Amended Complaint that Plaintiff's arrest yielded evidence necessary to sustain her conviction, her false arrest claim is not barred by *Heck*.

Likewise, Plaintiff's equal protection claim, which is premised on Police Defendants' failure to perform an accident reconstruction as part of their investigation of the accident, would not necessarily invalidate her conviction. Thus, it does not conflict with the holding in *Heck*. However, Plaintiff may not pursue any damages arising from her conviction and incarceration in relation to her equal protection claim.

Plaintiff also alleges that Police Defendants filed an accident report containing misinformation. To the extent Plaintiff claims this information was relied upon in effectuating her arrest, it may be considered as part of her false arrest claim. Liberally construing Plaintiff's pleadings, the Court interprets Plaintiff's allegation to raise the additional claim that Police Defendants violated her procedural due process right to a fair trial by fabricating evidence against her. *See Ying Li*, 246 F. Supp. 3d at 627 ("Fabrication of evidence constitutes a violation of [the] right to a fair trial" under the Fifth, Sixth, and Fourteenth Amendments). Claims alleging denial of the right to a fair trial through the fabrication of evidence imply the invalidity of any underlying criminal convictions and are precluded by *Heck*. *See Bowers v. Kelly*, No. 13-CV-6265(LGS), 2015 WL 2061582, at *4 (S.D.N.Y. May 4, 2015); *Perez v. Cuomo*, No. 09-CV-1109(SLT), 2009 WL 1046137, at *7 (E.D.N.Y. Apr. 20, 2009) (a Section 1983 claim for violation of the due process right to fair trial "is, in essence, a claim for damages attributable to an unconstitutional conviction," and is not cognizable where the conviction has not been invalidated). Thus, Plaintiff's claim that falsified information in the accident report denied her of her due process right to a fair trial is barred by *Heck*.

In sum, Plaintiff's claims are only partially barred by *Heck*. To the extent Plaintiff challenges the accuracy of her blood draw results and the conclusion in various investigative materials that she was the driver of the car, her claims would necessarily suggest the invalidity of her conviction and incarceration for DWI and must be dismissed.[9] Similarly, Plaintiff may not bring a claim premised on Police Defendants' purportedly unreasonable delay in initiating criminal proceedings against her, or the denial of her due process rights in falsifying information in the accident report. Conversely, insofar as Plaintiff seeks damages arising from injuries unrelated to her conviction and incarceration, resulting from the blood draw itself or Defendants' lack of probable cause to arrest her, her claims are not barred.

**B.** *Municipal Liability*

Police Defendants next argue that Defendant Town of Carmel cannot be held liable under Section 1983 because Plaintiff does not plausibly assert a *Monell* claim.

A municipality, like Defendant Town of Carmel, may be sued under § 1983 only "when execution of [the] government' s policy or custom ... inflicts the injury." *Monell v. Dep' t of Soc. Serv. of the City of N.Y.*, 436 U.S. 658, 694 (1978). A plaintiff asserting a *Monell* claim against a municipal entity must "show that the challenged acts were performed pursuant to a municipal policy or custom." *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004). Courts in this Circuit apply a two-prong test for § 1983 claims brought against a municipal entity. *Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985). First, the plaintiff must "prove the existence of a municipal policy or custom in order to show that the municipality took some

---

[9] "Dismissals made pursuant to *Heck* are without prejudice, with reinstitution contingent upon any future determination that the plaintiff's conviction or continued incarceration is invalidated or called into question." *Bodie v. Morgenthau*, 342 F. Supp. 2d 193, 202 (S.D.N.Y. 2004) (citing *Amaker v. Weiner*, 179 F.3d 48, 52 (2d Cir. 1999)).

action that caused [the plaintiff's] injuries beyond merely employing the misbehaving officer." *Id.* (internal citation omitted). Second, the plaintiff must establish a "'direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" *Hayes v. County of Sullivan*, 853 F. Supp. 2d 400, 439 (S.D.N.Y. 2012) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). For an unofficial policy or custom to invite *Monell* liability, the practice, custom or usage must be so widespread and so persistent that it has the force of law. *See Lauro v. City of New York*, 39 F. Supp. 2d 351, 366 (S.D.N.Y. 1999), *rev'd on other grounds*, 219 F.3d 202 (2d Cir. 2000).

A complaint must include more than broad or vague allegations to support a *Monell* claim. "[T]he simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused the plaintiff's injury." *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993); *see also Davis v. City of New York*, No. 07-CV-1395(RPP), 2008 WL 2511734, at *6 (S.D.N.Y. June 19, 2008) (holding that "conclusory allegations that a municipality failed to train and supervise its employees" are insufficient to state a *Monell* claim absent supporting factual allegations). Similarly, it is not enough to allege simply that a municipal policy or custom exists. *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995). A municipality may not be held liable under § 1983 on a *respondeat superior* theory solely because the municipality employs an individual who violated the law. *Monell*, 436 U.S. at 692.

Here, Plaintiff has made no allegation that her injuries were caused by a policy, custom, or practice of the Town of Carmel. To be sure, Plaintiff complains that her constitutional rights were violated precisely because Police Defendants failed to follow their own policies and procedures. (*See* Am. Compl. ¶¶ 90–94.) Moreover, the fact that the individual Police

Defendants were employed by the Town of Carmel, (Am. Compl. ¶ 90), is an insufficient basis to impose *Monell* liability. Accordingly, Plaintiff does not state a plausible claim for relief against the Town of Carmel, and the Amended Complaint must be dismissed as against that entity.

## C. *Individual Liability*

Police Defendants claim that the Amended Complaint also fails to state a plausible claim for relief against any of the individual Police Defendants. First, they argue that Defendant Cazzari lacked sufficient personal involvement in any alleged constitutional violation to state a Section 1983 claim against him. Second, they contend that Defendants Eagan and Dearman are entitled to qualified immunity. The Court addresses each of these arguments in turn.

### 1. *Personal Involvement*

In order to hold a defendant responsible for a constitutional deprivation, a plaintiff must demonstrate, *inter alia*, the defendant's personal involvement. *Grullon v. City of New Haven*, 720 F.3d 133, 138–39 (2d Cir. 2013). "[P]ersonal involvement of Defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [42 U.S.C. § 1983.]" *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977). "The general doctrine of respondeat superior does not suffice and a showing of some personal responsibility of the Defendant is required." *Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060 (2d Cir. 1989); *Monell*, 436 U.S. at 692–95. Supervisory officials may be personally involved within the meaning of Section 1983 only if they participated in unlawful conduct. *See Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir. 1986). "A Plaintiff must thus allege a tangible connection between the acts of a Defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). "[A] Plaintiff must plead that each Government-official defendant, through the official's own individual

actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

In the Second Circuit, personal involvement in an alleged constitutional violation may be established if:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). Courts in this Circuit, however, are "divided as to whether the five categories announced in *Colon* may still be used as the bases for liability under § 1983" following the Supreme Court's decision in *Iqbal*. *See Allah v. Annucci*, No. 16-CV-1841 (KMK), 2017 WL 3972517, at *6 (S.D.N.Y. Sept. 07, 2017).

The Second Circuit has not squarely addressed how *Iqbal*, which "may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations," affects the standards in *Colon* for establishing liability. *Allah*, 2017 WL 3972517 at *6 (internal quotation marks and citations omitted); *see also Reynolds v. Barrett*, 685 F.3d 193, 205 n.14 (2d Cir. 2012) ("*Iqbal* has, of course, engendered conflict within our Circuit about the continuing vitality of the supervisory liability test set forth in *Colon v. Coughlin*."). Overall, however, "[t]he majority of the district courts ... have held that, absent any contrary directive for the Second Circuit, all five *Colon* factors survive where the constitutional violation at issue does not require a showing of discriminatory intent." *Allah*, 2017 WL 3972517 at *6 (quoting *El-Hanafi v. United States*, No, 13-CV-2072, 2015 WL 72804, at *13 (S.D.N.Y. Jan. 6,

2015)) (collecting cases). This Court has already expressed its agreement with that proposition and applies its prior holdings with equal force here.[10]

To the extent that most of Plaintiff's claims against Defendant Cazzari do not require a showing of discriminatory intent,[11] the Court will apply all five *Colon* factors. *See Marom v. City of New York*, No. 15-CV-2017(PKC), 2016 WL 916424, at *15 (S.D.N.Y. Mar. 7, 2016), *partially reconsidered on separate grounds,* No. 15-CV-2017(PKC), 2016 WL 5900217 (S.D.N.Y. July 29, 2016) (recognizing that *Iqbal* "only requires that a supervisor's action— whether direct or through 'his or her superintendent responsibilities'—must *itself* violate the terms of the constitutional provision at issue.").

Here, Plaintiff suggests that Defendant Cazzari was personally involved in the violation of her constitutional rights under the second *Colon* factor. She states that Cazzari is responsible for overseeing the Carmel Police Department and that he failed to investigate the allegations she made against Defendants Eagan and Dearman in her complaint dated January 11, 2017. (Am. Compl. ¶¶ 84–88.) While Plaintiff alleges that her complaint put Defendant Cazzari on notice of Plaintiff's grievances, however, the Amended Complaint does not plausibly allege that Defendant Cazzari had the ability to "remedy the wrong." At the time she sent her complaint to Defendant Cazzari, Plaintiff had already been charged with, and pleaded guilty to, the DWI charge. (*See* Czolacz Decl. Ex. A.) Thus, Plaintiff's grievances regarding the investigative process that led to her arrest did not constitute ongoing violations which Defendant Cazzari had the power to stop. *See Rahman v. Fisher*, 607 F. Supp. 2d 580, 585 (S.D.N.Y. 2009)

---

[10] *See Booker v. Griffin*, No. 16-CV-00072 (NSR), 2018 WL 1614346, at *11 (S.D.N.Y. Mar. 31, 2018); *Marshall v. Annucci*, No. 16-CV-8622 (NSR), 2018 WL 1449522, at *9 (S.D.N.Y. Mar. 22, 2018); *Matteo v. Perez*, No. 16-CV-1837 (NSR), 2017 WL 4217142, at *5 (S.D.N.Y. Sept. 19, 2017).

[11] Plaintiff's class-of-one equal protection claim contains an element of discriminatory intent, and thus may require the heightened showing of personal involvement described in *Iqbal*. Since Plaintiff fails to adequately plead personal involvement under any *Colon* category, however, the Court need not separately address this issue.

("Receiving *post hoc* notice does not constitute personal involvement ... a supervisor may be liable for her failure to remedy a violation only in those circumstances where the violation is ongoing and the defendant has an opportunity to stop the violation after being informed of it.").

To be sure, "[a]mple Second Circuit case law makes clear that a Plaintiff does not state a claim where he alleges only that a supervisory official received reports of wrongdoing." *Samuels v. Fischer*, 168 F. Supp. 3d 625, 637 (S.D.N.Y. 2016) (citations omitted). Mere "knowledge and acquiescence" to unconstitutional conduct, or mere failure to act on a complaint, without more, fails to state a claim against a Section 1983 defendant. *Faulk v. N.Y. City Dep't of Corr.*, No. 08-CV-01668(LGS), 2014 WL 239708, at *10 (S.D.N.Y. Jan. 21, 2014) (citing *Iqbal*, 556 U.S. at 677); *Sanders v. City of N.Y.*, No. 14-CV-6156, 2016 WL 1023318, at *3 (S.D.N.Y. Mar. 8, 2016); *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (New York State Department of Corrections and Community Supervision Commissioner was not personally involved simply because Plaintiff wrote complaint letters to him); *Mateo v. Fischer*, 682 F. Supp. 2d 423, 430 (S.D.N.Y. 2010) ("[T]he receipt of letters or grievances, by itself, does not amount to personal involvement.").

Plaintiff provides only allegations that she sent a complaint with a "binder of exhibits to back up her allegations" regarding past events to Defendant Cazzarri, and that Cazzarri responded by informing her that "[t]he Police Department is not the proper venue for appeal." (Am. Compl. ¶¶ 86–87.) Plaintiff's claims must be dismissed as against Defendant Cazzari for lack of personal involvement.

### 2. *Qualified Immunity*

Qualified immunity is an affirmative defense that shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." *Stephenson v. Doe*, 332

F. 3d 68, 76 (2d Cir. 2003) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A

defendant should raise a qualified immunity defense during pretrial proceedings so that the issue

of qualified immunity can be resolved in the earliest possible stage of litigation. *Id.* In order to

determine whether a defendant is entitled to qualified immunity, the Court must consider: (1)

whether a constitutional right has been violated; (2) whether that right was clearly established at

the time; and (3) whether the officer had an objectively unreasonable belief that his or her

conduct was lawful. *Id.* In determining if a right is clearly established, the Court must find that:

(1) the right is defined with reasonable clarity; (2) the Supreme Court or the Second Circuit has

confirmed the existence of that right; and (3) "a reasonable defendant would have understood

that his conduct was unlawful." *Doniger v. Niehoff*, 642 F.3d 334, 345 (2d Cir. 2011).

The Court turns first to the question of whether Plaintiff plausibly alleges violations of

her constitutional rights.

### a) *Fourth Amendment Violations*

The Court construes the Amended Complaint as alleging that Police Defendants violated

Plaintiff's Fourth Amendment rights in two ways. First, Police Defendants performed a

warrantless blood draw on Plaintiff while she was unconscious, without consent. Second, Police

Defendants deprived Plaintiff of her liberty without probable cause when they arrested her in

October 2015. Neither of these allegations plausibly states a Fourth Amendment violation.

Although blood tests are "searches" under the Fourth Amendment, the Fourth

Amendment only proscribes those searches that are unreasonable. *See Skinner v. Ry. Labor

Execs.' Ass'n*, 489 U.S. 602, 619 (1989); *Anthony v. City of New York*, 339 F.3d 129, 141–42 (2d

Cir. 2003). A blood test at the direction of law enforcement with probable cause, exigent

circumstances, and a reasonable examination procedure is not unreasonable. *Haynes v. Brat*, No. 06-CV-6188, 2007 WL 3047101, at *5 (W.D.N.Y. Oct. 18, 2007) (citing *Schmerber v. California*, 384 U.S. 757, 759 (1966); *People v. Kates*, 53 N.Y. 2d 591, 594 (1981)); *see Skinner*, 489 U.S. at 625 (holding that it was reasonable for the government to require employees involved in certain train accidents to submit to a breathalyzer test to test for the presence of alcohol); *Roe v. Marcotte*, 193 F.3d 72, 77 (2d Cir. 1999) ("Thus, we need only decide whether the statutorily required blood test at issue comports with the Fourth Amendment's mandate that a search be reasonable."); *Mac Ineirghe v. Bd. of Educ. of E. Islip Union Free Sch. Dist.*, 05-CV-4323(JFB)(AKT), 2007 WL 2445152, at *11 (E.D.N.Y. Aug. 22, 2007) ("Courts have upheld both urinalysis and blood tests as reasonable."); *Beharry v. M.T.A. N.Y. City Transit Auth.*, No. 96-CV-1203(FB), 1999 WL 151671, at *11 (E.D.N.Y. Mar. 17, 1999) (holding that a request for a blood and urine sample was reasonable and did not violate the Fourth Amendment because the plaintiff had failed to comply with the first request); *see also Sack v. Lowder*, Nos. 91-CV-7082, 91-CV-7111, 1992 WL 2884, at *4–*5 (10th Cir. Jan. 6, 1992) (holding that a blood draw of the driver in an accident resulting in a death, which was completed in compliance with a state statute, was not a Fourth Amendment violation).

The Court addressed the reasonableness of Plaintiff's blood draw in its prior Opinion dated February 1, 2019, as follows:

> Based on the face of the Amended Complaint, the blood draw was reasonable. Plaintiff was in a serious motor vehicle accident driving at an unsafe speed and left of pavement markings, after leaving a bar, so serious that she was rendered unconscious and partially sent through a windshield and that at least one of her passengers also sustained serious injuries. Law enforcement arrived at the scene and had Plaintiff airlifted to WMC for medical treatment. Once she had arrived at WMC, Plaintiff remained unconscious when Defendant Ward, at the request of a law enforcement officer, drew her blood to determine her blood alcohol content

level.  These allegations indicate that law enforcement had probable cause[12] to believe that Plaintiff had been driving while intoxicated …

*Luck v. Westchester Medical Center*, 7:17-CV-9110, Docket No. 63 at 7 (Feb. 1, 2019).

Moreover, while the natural dissipation of alcohol in the bloodstream does not "establish a *per se* exigency that suffices on its own to justify an exception to the warrant requirement for consensual blood testing in drunk-driving investigations," *Missouri v. McNeely*, 569 U.S. 141, 147 (2016), the fact that time had to be taken to bring Plaintiff to a hospital and to investigate the scene of the accident, leaving no opportunity to seek out a magistrate and secure a warrant, suffices to establish that exigent circumstances existed in this case, *see id.* at 151.  Accordingly, Plaintiff fails to state a plausible claim for relief against Police Defendants under the Fourth Amendment based on the warrantless blood draw.

A claim for false arrest under Section 1983, including arrest without probable cause, is substantially the same as that under New York law.  *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)).  To establish a cause of action for false arrest under Section 1983 and New York law, a plaintiff must show that (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged.  *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (quoting *Broughton v. State of New York*, 37 NY2d 451, 456 (1975)).

---

[12] In a similar case, the Second Circuit determined that law enforcement had probable cause to arrest a person for driving while intoxicated because he knew that the person had driven his pickup truck into a telephone pole in the early hours of the morning.  *Coons v. Casabella*, 284 F.3d 437, 441 (2d Cir. 2002); *see also People v. Bohacek*, 945 N.Y.S.2d 460, 461 (N.Y. App. Div. 2012) (holding that there was probable cause to perform a blood test on the defendant who was in an accident due to, together with the discovery of pills in her car, her failure to keep right in clear weather conditions); *People v. Steel*, 265 A.D.2d 586, 586 (N.Y. App. Div. 1999) (holding that there was probable cause to arrest the defendant for driving while intoxicated when he was found unconscious in his automobile after an accident).

"An arrest of a criminal suspect by a law enforcement officer with probable cause is a 'privileged' confinement even if it is non-consensual." *Biswas v. City of New York*, 973 F. Supp. 2d 504, 515 (S.D.N.Y. 2013).  Thus, probable cause "is an absolute defense to a false arrest claim" brought under New York law or Section 1983.  *Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013) (quoting *Torraco v. Port Auth. of N.Y. and N.J.*, 615 F.3d 129, 139 (2d Cir. 2010)); *see Ackerson*, 702 F.3d at 19;  *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006) (citing *Weyant*, 101 F.3d at 852).  An officer has probable cause to arrest "when he or she has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'"  *Jaegly*, 439.F.3d. at 152 (quoting *Weyant*, 101 F.3d at 852).  In deciding whether probable cause existed for an arrest, a court is required to consider whether "those facts *available to the officer* at the time of the arrest and immediately before it" objectively provided probable cause to arrest.  *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (quoting *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002)) (quotation marks omitted) (emphasis in original).

The Amended Complaint and the exhibits attached thereto demonstrate that Police Defendants had ample probable cause to arrest Plaintiff.  The accident report prepared by Defendant Eagan describes Defendant Eagan's own observations at the accident scene, which are corroborated by the information in police records from the night of the accident.  (Am. Compl. Exs. F & L.)  The blood draw taken from Plaintiff at WMC was sent to a toxicology lab for testing and revealed, on June 30, 2015, that Plaintiff's BAC was .23% on the night of the accident.  (*Id.* Ex. D-1.)  A sworn statement provided by one of the car's passengers indicated that Plaintiff was the driver of the car, was drinking at a bar prior to the accident, and behaved

erratically in the moments preceding the high-speed crash. (*Id.* Ex. G.)

The fact that Police Defendants did not perform an accident reconstruction, maintain custody of Plaintiff's car, or interview Plaintiff prior to her arrest does not negate these facts. Moreover, while Plaintiff takes issue with Police Defendants' alleged misrepresentations in the accident report as to whether an accident reconstruction was performed, and the precise time of the accident, she does not challenge any portion of the accident report that has a material bearing on whether she committed the crimes for which she was arrested. Nor does Plaintiff provide any alternative explanation of the events immediately preceding the crash, or any rational basis for doubting the testimony of Jessica Lugo.[13] For these reasons, Plaintiff fails to plausibly state a claim for false arrest in violation of the Fourth Amendment.

> *b)    Fourteenth Amendment Violations*

Plaintiff likewise fails to plausibly allege a violation of her constitutional rights to due process and equal protection based on the warrantless blood draw and the individual Police Defendants' investigation of the accident.

To state a procedural due process claim under the Fourteenth Amendment, Plaintiff must show "(1) that Defendants deprived [her] of a cognizable interest in life, liberty, or property, (2) without affording [her] constitutionally sufficient process." *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017) (internal quotation marks omitted). Additionally, to establish a violation of substantive due process, a plaintiff must allege government action so egregious or outrageous that it can be said to shock the conscience. *Pena v. DePrisco*, 432 F.3d 98, 112 (2d Cir. 2005).

---

[13] Plaintiff claims only that she could not have been the driver of the car since she was partially ejected through the passenger side window. (*See, e.g.*, Pl.'s Opp. ¶ 3.) Aside from the fact that Plaintiff is barred from contending that she was not the driver of the vehicle in light of her guilty plea and conviction, this argument rests on the faulty and unsupported premise that there is only ever one direction in which a driver can be ejected from a vehicle upon collision and is unpersuasive to the Court.

Where probable cause exists, "there can be no claim for denial of either the procedural or substantive right to due process." *Harris v. Cty. of Nassau*, 581 F. Supp. 2d 351, 357 (E.D.N.Y. 2008).

"The Supreme Court has held that the taking of a blood sample while a person is unconscious by a qualified technician and in a controlled setting does not offend due process because 'there is nothing brutal or offensive in the taking of a sample of blood when done ... under the protective eye of a physician.'" *Belgarde v. Montana*, 123 F.3d 1210, 1214 (9th Cir. 1997) (internal quotation marks omitted) (quoting *Breithaupt v. Abram*, 352 U.S. 432, 435 (1957)); *see Schmerber*, 384 U.S. at 759–60 (holding that an involuntary extraction of the plaintiff's blood at the direction of law enforcement for the purposes of testing for alcohol content did not violate the Due Process Clause of the Fourteenth Amendment and upholding *Breithaupt*); *Robinson v. N.Y. State Div. of Parole*, No. 11-CV-4454(PKC), 2018 WL 4762250, at *6 (E.D.N.Y. Oct. 2, 2018) ("*Schmerber* 'also rejected arguments that the coerced blood test violated the right to due process.'" (quoting *South Dakota v. Neville*, 459 U.S. 553, 559 (1983)); *see also Makas v. Miraglia*, 300 F. App'x 9, 11 (2d Cir. 2008) (vacating the district court's dismissal of the plaintiff's claim that he was subjected to excessive blood tests in violation of substantive due process and directing the lower court to analyze the claim under the Fourth Amendment).

As the Court has already held,

> Nothing in Plaintiff's Amended Complaint suggests that the circumstances of her blood draw violated the Fourteenth Amendment. While Plaintiff was unconscious, Defendant Ward, a registered nurse, took a sample of her blood at WMC. (Compl. ¶¶ 3, 5 & 42.) Based on the face of the Amended Complaint, there was nothing "brutal or offensive" in the taking of her blood sample; she was afforded appropriate process consistent with the Due Process Clause and New York Vehicle and Traffic Law.

*Luck v. Westchester Medical Center*, 7:17-CV-9110, Docket No. 63 at 8 (Feb. 1, 2019).

Accordingly, Plaintiff fails to state a plausible claim for relief under the Fourteenth Amendment

as against any Defendant based on the blood draw.

As discussed above, Plaintiff's remaining Fourteenth Amendment due process claims

based on Police Defendants' actions amount to an allegation that Police Defendants failed to

adequately investigate the accident prior to her arrest and prosecution.  Since no substantive due

process claim arises from a failure to investigate, Plaintiff's claim is subsumed by the Fourth

Amendment false arrest analysis discussed above.  *See Ying Li*, 246 F. Supp. 3d at 632–33.  Even

if Plaintiff had properly alleged a substantive due process claim separate from her right to be free

from deprivations of liberty without probable cause, Plaintiff has not alleged actions taken by

Police Defendants that were so egregious or outrageous as to shock the conscience.  Indeed,

there is no federal constitutional requirement that the police take any specific procedural steps,

such as performing an accident reconstruction or maintaining custody of a vehicle, when

investigating an accident.  *See A.J. ex rel. Dixon v. Tanksley*, 822 F.3d 437, 443 (8th Cir. 2016)

(failure to perform accident reconstruction or interview certain witnesses following accident did

not amount to a substantive due process violation).

Plaintiff's Fourteenth Amendment equal protection claim fares no better.  "The Equal

Protection Clause requires that the government treat all similarly situated people alike."  *Harlen

Assoc. v. Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) (citing *Cleburne v. Cleburne

Living Ctr.*, 473 U.S. 432, 439 (1985)).  Successful equal protection claims may be brought by a

"class-of-one" where the plaintiff who is not a member of a protected class alleges that she has

been intentionally treated differently from others similarly situated and that there is no rational

basis for the difference in treatment.  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564–65

(2000) (citing *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441 (1923); *Allegheny Pittsburgh Coal Co. v. Comm'n of Webster County*, 488 U.S. 336 (1989)).

The Second Circuit has clarified that, to prevail on a class-of-one Equal Protection claim, a plaintiff must establish that she and a comparator are "*prima facie* identical" by showing that

> (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake.

*Hu v. City of New York*, 927 F.3d 81, 92 (2d Cir. 2019) (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005)).

Plaintiff fails to meet this high bar. The three other accident investigations Plaintiff describes in the Amended Complaint, where an accident reconstruction was allegedly performed, (Am. Compl. ¶ 92), do not bear the "extremely high degree of similarity," *Ruston v. Town Bd. for the Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010), necessary to state a class-of-one claim. For example, two of the accidents were multi-vehicle collisions, (Am. Compl. Exs. X & Y), and the third involved a single driver without passengers who crashed into a telephone poll, (*Id.* Ex. Z). Irrespective of Plaintiff's attempts to point to differential treatment, her claim must be dismissed because she fails to identify a sufficiently "similarly situated" comparator. *See United States v. Faison*, 670 F. App'x 721, 722 (2d Cir. 2016) (summ. order) (affirming dismissal of equal protection claim where plaintiff "ha[d] not demonstrated that any potential comparators are 'prima facie identical' to him").

For the foregoing reasons, Plaintiff fails to plausibly state a Fourteenth Amendment violation. Since all of Plaintiff's constitutional claims against the individual Police Defendants are insufficiently pleaded, and must be dismissed on that ground, the Court need not proceed any

further in its analysis of the individual Police Defendants' qualified immunity defense. *See Finch v. City of New York*, 591 F. Supp. 2d 349, 361 (S.D.N.Y. 2008).

## CONCLUSION

For the foregoing reasons, Police Defendants' motion to dismiss is GRANTED, and the Amended Complaint is dismissed as against Police Defendants without prejudice. Plaintiff may file a Second Amended Complaint consistent with this Opinion and Order and the Court's February 1, 2019, Opinion and Order, (ECF No. 63), on or before March 2, 2020. Because Plaintiff's Second Amended Complaint will completely replace, not supplement, the Amended Complaint, any facts or claims that Plaintiff wishes to remain must be included in the Second Amended Complaint. Thereafter, Defendants are directed to file their answers or otherwise respond by April 2, 2020. Plaintiff is advised that failure to timely file her Second Amended Complaint will result in dismissal of all claims that are not *Heck*-barred with prejudice. All *Heck*-barred claims will remain dismissed without prejudice with reinstitution contingent upon any future determination that Plaintiff's conviction or continued incarceration is invalidated or called into question.

The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 72, mail a copy of this Opinion and Order to Plaintiff at her address as listed on ECF, and show proof of service on the docket.

Dated:  Feb. 4, 2020
        White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge